DAY v. KLAW et al.

(Supreme Court, Appellate Term.　November 24, 1908.)

CONTRACTS (§ 228*)—CONSTRUCTION—ADDED CLAUSE.

　　An agreement by an actor with resident theater managers provided for his employment for 25 weeks at a stated salary, to which agreement was interpolated a clause fixing the liability of the parties as to railroad fare. The actor was immediately put on the road under their direction.　During the itinerary he had no engagement for two weeks.　*Held,* in an action for his compensation for the two weeks, that the agreement construed with the interpolated clause showed that the managers intended to utilize and direct the actor on the road, and hence they were liable for the compensation, as it would be presumed that his recess was at their instance.

　　[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1042; Dec. Dig. § 228.*]

　　Seabury, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Third District.

Action by George W. Day against Marc Klaw and another for services.　From a judgment for plaintiff, defendants appeal.　Affirmed.

Argued before GILDERSLEEVE, P. J., and MacLEAN and SEABURY, JJ.

Maurice Goodman, for appellants.

M. Strassman, for respondent.

MacLEAN, J.　"This agreement made between Klaw & Erlanger party of the first part and George W. Day parties of the second part [reciting the instrument signed by the parties herein] witnesseth: The said parties of the second part hereby agree to render their services to the party of the first part at the Klaw & Erlanger Theatre for a term of twenty-five consecutive weeks　*　*　*　for the sum of one hundred and fifty (150) dollars per week."　All of five further stipulations state agreements or concessions by the plaintiff the party of the second part.　Therefrom it is claimed in this action for compensation for 2 weeks of the 25 in which 2 weeks the plaintiff did not actually play that "the entire document discloses no obligation on the part of the defendants."　Literally as printed it looked something that way.　But the parties interpolated a clause over their signature and put their own interpretation on their engagements.　The clause interpolated was:

　　"It is understood that during this engagement the cost of any railroad fare from one town to another shall not exceed the sum of five dollars for each person.　It is also understood that if the party of the second part plays west of Chicago during this engagement, the fares from Chicago and back to Chicago are to be paid by the party of the first part."

Construing their relations according to their understanding, and not after the agreement drawn for them by a vaudeville agent, the plaintiff, a play actor, never opened at the Klaw & Erlanger Theatre and his employers never asked him to.　They assumed to direct him and to

utilize his services elsewhere, beginning at Brooklyn, and thence across and around the country, in all which the plaintiff acquiesced, playing a week at a time in cities from Boston to El Paso and Denver for 25 weeks, excepting one week between two cities in Massachusetts, and another week between appearances in Texas and Colorado. These are the two weeks for which the defendants did not pay, and to avoid paying for which they are in litigation. Although he did not actually play in these weeks, there is no question but that the actor was under the orders of the managers. It came out incidentally that their itinerary, as ordered, requiring an engagement at Denver to follow one at El Paso laid out the opening for one week, commonly beginning on Sunday or Monday. Just why the week was laid out in Massachusetts does not appear, but, as the plaintiff was under defendants' control, the presumption arises that his recess was at their instance. The judgment should be affirmed, with costs.

Judgment affirmed, with costs to the respondent.

GILDERSLEEVE, P. J., concurs.

SEABURY, J. (dissenting). The plaintiff has recovered judgment against the defendants for breach of a contract of employment. The complaint alleges that under the contract the defendants "promised to pay the plaintiff" $150 per week for his services. The plaintiff has recovered judgment for $389.82. Of this sum $300 was for damages arising from the failure of the defendants to employ the plaintiff for the period of two weeks. The balance of the amount for which the plaintiff recovered was for railroad fares and interest. The agreement between the parties is as follows:

"This agreement, made this twelfth day of April, 1907, between Klaw & Erlanger party of the first part, and George W. Day party of the second part, witnesseth:

"(1) The said parties of the second part hereby agree to render their services to the party of the first part at the Klaw & Erlanger Theatres for a term of twenty-five consecutive weeks, commencing September 9th, 1907, at two performances each week day, and at such Sunday concerts as may be lawfully given, for the sum of one hundred and fifty ($150) dollars, per week, payable at the end of the week.

"(2) The said parties of the second part agree that they will not either privately or publicly give any performance at any theater, hall or public place, within 10 city blocks of Klaw & Erlanger's Theatres, for a period of three months previous to the opening date of this contract, except by permission in writing by the party of the first part.

"(3) That in case of a violation or threatened violation of this agreement it is consented that an injunction may issue from any court of competent jurisdiction to restrain any such violation or threatened violation.

"(4) If, on account of sickness, or other unavoidable happening, the party of the second part is unable to and does not render the services called for at the time herein mentioned, then the party of the second part shall not, privately or publicly, perform or appear for any other person or in any other public place of amusement, until the said party of the second part shall have given two weeks notice in writing at the office of the party of the first part that the party of the second part will in said two weeks be ready to perform, and give unto the party of the first part an option and right in and to the services of the party of the second part at the expiration of said two weeks, for as long a period as the party of the second part would have ap-

peared and performed, provided the said illness or other event had not happened.

"(5) It is further agreed that the party of the first part shall have an option upon the services of the party of the second part for a period of ten weeks at the expiration of this contract, by giving the party of the second part a notice of ten weeks prior to the expiration of this contract.

"(6) The party of the first part is to deduct five per cent. commission from the salary of the party of the second part, and pay the same to William Morris, for services rendered to the party of the second part.

"Notes: · It is understood that during this engagement the cost of any railroad fare from one town to another shall not exceed the sum of five dollars for each person. It is also understood that if the party of the second part plays west of Chicago during this engagement, the fares from Chicago and back to Chicago are to be paid by the party of the first part.

"In witness whereof, the parties hereto have hereunto set their hands and seals the day and year first above written.

"In the presence of: Geo. W. Day.

"Klaw & Erlanger."

It will be observed from this agreement that it lacks any element of mutuality. In it the plaintiff obligated himself to do several things, but the defendants did not obligate themselves to do anything. As the agreement imposed no obligation upon the defendants, it is impossible that the defendants should have been guilty of a breach of their obligations when they assumed no obligations. That the agreement is not a fair and just contract may be entirely true, but, not having been cancelled or reformed, it is the duty of a court of law to interpret it as it is. We have no right by interpretation to make a contract different from the contract which the parties made for themselves. Under the agreement upon which this action is brought the defendants had an option to require the plaintiff to do certain things. The defendants did not obligate themselves to do anything.

The railroad fares, amounting to $80.83, which the plaintiff laid out on behalf of the defendants, are charges for which the defendants are liable. As to this item, the defendants admitted their liability upon the trial.

The judgment should be reversed, with costs to the appellants to abide the event, unless the respondent stipulates to reduce the judgment to $80.83, in which event the judgment should be affirmed, with costs to the appellants.